UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NATHANIEL JAY,

            Plaintiff,

    v.

D. VENETOZZI and WILLIAM HUGHES,

            Defendants.

**DECISION AND ORDER**

15-CV-147S

## I.  INTRODUCTION

In this action, Plaintiff Nathaniel Jay alleges that Defendants, employees of the New York Department of Corrections and Community Supervision ("DOCCS"), violated his constitutional rights by denying him due process at a disciplinary hearing and by affirming the decision that resulted from that hearing. Before this Court is Defendants' Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, which Jay opposes. (Docket Nos. 40, 46). For the following reasons, Defendants' motion for summary judgment is granted.

## II.  BACKGROUND

Unless otherwise noted, the following facts are not disputed for purposes of the motion for summary judgment. This Court takes the facts in the light most favorable to Jay, the non-moving party. See Mitchell v. City of New York, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to ... the non-moving party").

At all relevant times, Jay was an inmate at Attica Correctional facility, under the care and custody of DOCCS. (Defendants' Statement of Undisputed Facts, Docket No.

40-1, ¶ 1.) Defendant William Hughes was Deputy Superintendent of Security ("DSS") at Attica. (Id., ¶ 2.) Defendant Donald Venetozzi was the Director of the Special Housing Unit ("SHU") for DOCCS. (Id., ¶ 3.)

## A.   The February 17, 2012, Incident

On February 17, 2012, an incident occurred between Jay and C.O. Summers. According to the misbehavior report subsequently authored by Summers, Jay reached his arm out of his cell and struck Summers in the left shoulder with an altered mirror. (Docket No. 40-3 at p. 50.) The report indicates that Summers ordered Jay to stop, and that Jay refused to stop or to surrender the mirror. (Id.) Jay appears to contest these allegations. (Docket No. 46 at pp. 8, 17.) Summers left and reported the incident to Sergeant Leonard. (Docket No. 40-3 at p. 50.)

After this incident, Summers recovered the altered mirror in Jay's cell. (Id.) Jay disputes whether Summers actually performed the search. (Docket No. 46 at p. 8.) Jay was served with Summers's misbehavior report on this incident on February 21, 2012. (Docket No. 40-1, ¶ 9.)

## B.   The Tier III Hearing

Defendant William Hughes presided over the Tier III disciplinary hearing related to this incident. The hearing began on February 23, 2012, and ended on March 5, 2012, after being adjourned several times. (Docket No. 40-1, ¶ 6.) Jay was charged with seven violations: violent conduct; assault on staff; possession of a weapon; possession of an altered item; harassment; refusing a direct order; and threats. (Docket No. 1 at p. 20; see also Docket No. 40-3 at p. 54.)

There is no evidence in the record suggesting that Hughes personally participated

2

in any investigation of Jay's alleged misconduct prior to the hearing.

All of the witnesses Jay requested testified at the hearing: C.O. Summers; Sergeant Leonard; C.O. Caldwell; and Nurse Cathy Sault. (Id. at pp. 39-46.) Jay asked many questions of the witnesses during the hearing. (Id.) At the hearing, Jay's hands were restrained behind his back. He asked for the restraints to be removed, or that his hands be cuffed in front of him to permit him to access his documents. (Docket No. 40-3 at p. 16)   In response, Hughes stated, "No but anything you want let me know I will grab it," to which Jay replied, "alright."   (Id.)

During the hearing, Jay requested the introduction of his disciplinary records. (Id. at p. 44.) Hughes denied this request, stating that the records were irrelevant. (Id. at p. 45.) After hearing the witnesses' testimony, Hughes found Jay guilty of all charges and imposed a penalty of 24 months in SHU with a corresponding loss of privileges. (Id. at pp. 46-47.) There are two versions of the hearing disposition form in the record, one without a tape number,[1] which Jay attached to his complaint (Docket No. 1 at p. 20), and one with a tape number, which Defendants attached to their motion for summary judgment. (Docket No. 40-3 at p. 56.)

## C.    Jay's Appeal and Article 78 Proceeding

Jay appealed Hughes' decision and sentence to defendant Donald Venetozzi, director of the SHU. (Docket No. 40-1, ¶ 3.) On May 15, 2012, Venetozzi modified Jay's sentence to 18 months of SHU and loss of privileges. (Docket No. 40-3 at p. 58.) Jay ultimately served 13 months and 20 days of his SHU sentence. (Id. at p. 123.)

---

[1] § 254.6(a)(2) states that an inmate's disciplinary hearing must be recorded. This Court notes that the DOCCS hearing disposition sheet has a blank where a "tape number" is presumably to be entered. See, e.g., Docket No. 1 at p. 20.

Jay filed an Article 78 Motion in New York State Supreme Court in Wyoming County, seeking review of his Tier III hearing. (Id. at p. 125.) Acting Supreme Court Justice Mark Dadd denied Jay's petition, finding that Jay's due process rights were not violated at the hearing. (Id. at p. 126.) Judge Dadd held that Jay was not prevented from calling witnesses or submitting relevant documentary evidence, that Hughes acted rationally when he excluded Jay's disciplinary record as irrelevant, that credibility determinations were validly made, and that the sanction imposed was not excessive. (Id.) Jay appealed this decision to the Appellate Division, Fourth Department, which affirmed Judge Dadd's decision on June 13, 2014. (Id. at pp. 128-29.)

## III.  DISCUSSION

Cognizant of the distinct disadvantage that *pro se* litigants face, federal courts routinely read their submissions liberally, and interpret them to raise the strongest arguments that they suggest.  See Haines v. Kerner, 404 U.S. 519, 520, 92 S. Ct. 594, 596, 30 L. Ed. 2d 652 (1972); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).  This is especially important when reviewing *pro se* complaints alleging civil rights violations. See Weinstein v. Albright, 261 F.3d 127, 132 (2d Cir. 2001).  Since Jay is proceeding *pro se*, this Court has considered his submissions and arguments accordingly.

Two claims remain from Jay's original complaint.[2]  He claims first that Hughes denied him due process at his Tier III hearing, by (1) failing to serve as an impartial hearing officer; (2) serving as a hearing officer when his role as DSS was to oversee

---

[2] On August 15, 2015, the Hon. David Larimer granted Jay's motion to proceed *in forma pauperis* and dismissed his claims against Defendants Mark Bradt, Daniel Leonard, Christopher Summers, and F.J. Cromwell pursuant to 18 U.S.C. § 1915 (a). (Docket No. 3.)

search and contraband; (3) keeping Jay in manual restraints during the hearing; (4) refusing to admit evidence of Jay's prior disciplinary history at the hearing; (5) failing to record the tape number on the hearing  disposition sheet; and (6) imposing a sentence beyond that recommended in DOCCS guidelines. (Third Cause of Action.) Jay also claims that Venetozzi violated his rights by affirming Hughes' determination, and that Venetozzi's reduction of Jay's penalty proves that Hughes' original sentence violated Jay's rights. (Second Cause of Action.)

Defendants move for summary judgment on Jay's claims against Hughes and Venetozzi on the basis that Jay was afforded due process at his Tier III hearing, and that Venetozzi is not liable for affirming Hughes' finding or for reducing Jay's sentence.

## A.   Summary Judgment

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970).  "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any

5

evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82–83 (2d Cir. 2004) (citations omitted).

But a "mere scintilla of evidence" in favor of the nonmoving party will not defeat summary judgment. Anderson, 477 U.S. at 252. A nonmoving party must do more than cast a "metaphysical doubt" as to the material facts; it must "offer some hard evidence showing that its version of the events is not wholly fanciful." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986); D'Amico v. City of N.Y., 132 F.3d 145, 149 (2d Cir. 1998). That is, there must be evidence from which the jury could reasonably find for the non-moving party. See Anderson, 477 U.S. at 252.

"It is well established that the submissions of a *pro se* litigant must be construed liberally and interpreted 'to raise the strongest arguments that they suggest.'" Triestman v. Fed. Bur. of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (quoting Pabon v. Wright, 459 F.3d 241, 248 (2d Cir. 2006)). "A *pro se* plaintiff, however, cannot defeat a motion for summary judgment by simply relying on the allegations of his complaint; he must present admissible evidence from which a reasonable jury could find in his favor." Belpasso v. Port Auth. of NY & NJ, 400 F. App'x. 600, 601 (2d Cir. 2010); see Champion v. Artuz, 76 F.3d 483, 485 (2d Cir. 1996) (summary judgment properly entered against *pro se* plaintiff who failed to oppose motion with admissible evidence after receiving plainly worded warning of the consequences of such failure).

In the end, the function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

6

Anderson, 477 U.S. at 249.  "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

**B.   42 U.S.C. § 1983**

Civil liability is imposed under 42 U.S.C. § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws.  See 42 U.S.C. § 1983.  On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution.  See Graham v. Connor, 490 U.S. 386, 393-94,109 S. Ct. 1865, 1870, 104 L. Ed. 2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S. Ct. 2689, 2695, 61 L. Ed. 2d 433 (1979)).  Accordingly, as a threshold matter in reviewing claims brought pursuant to § 1983, it is necessary to precisely identify the constitutional violations alleged.  See Baker, 443 U.S. at 140.  Here, Jay's claims against Hughes and Venetozzi are grounded in the Fourteenth Amendment.

Personal involvement in the deprivation of a federal constitutional right is the *sine qua non* of liability under § 1983.  See Haygood v. City of New York, 64 F. Supp. 2d 275, 280 (S.D.N.Y. 1999). It is well settled in this circuit that personal involvement by defendants in cases alleging constitutional deprivations is a prerequisite to an award of damages under § 1983.  See McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977); Richardson v. Coughlin, 101 F. Supp. 2d 127, 129 (W.D.N.Y. 2000); Pritchett v. Artuz, No. 99 Civ. 3957 (SAS), 2000 WL 4157, at *5 (S.D.N.Y. Jan. 3, 2000).

The Second Circuit construes personal involvement in this context to mean "direct participation, or failure to remedy the alleged wrong after learning of it, or creation of a

policy or custom under which unconstitutional practices occurred, or gross negligence in managing subordinates." Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Personal involvement need not be active participation. It can be found "when an official has actual or constructive notice of unconstitutional practices and demonstrates gross negligence or deliberate indifference by failing to act." See Meriwether v. Coughlin, 879 F.2d 1037, 1048 (2d Cir. 1989). Thus, personal involvement can be established by showing that

> the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that constitutional acts were occurring.

Liner v. Goord, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Hayut v. State Univ. of New York, 352 F.3d 733, 753 (2d Cir. 2003).

## C.   Due Process Claims

Jay argues that Hughes violated his Fourteenth Amendment Due Process rights at his Tier III hearing. Jay also argues that Venetozzi violated his Fourteenth Amendment rights by affirming Hughes's Tier III guilty determination, and that Venetozzi's reduction of Jay's SHU sentence proves the invalidity of Hughes's initial sentence. Defendants argue that Hughes afforded Jay all the process required by the Constitution, and that Venetozzi is not liable either for affirming Hughes's decision or for reducing Jay's sentence.

### 1.  Legal Standards

8

Jay alleges that his Tier III hearing was constitutionally infirm.  He thus asserts a procedural due process claim. To prevail on this claim, he must establish (1) that he possessed a protected liberty or property interest and (2) that Defendants deprived him of that interest through constitutionally insufficient procedures.  See Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001) (citing Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996)).

### a.    Liberty Interest

"A liberty interest may arise from either of two sources – the Due Process Clause itself [or] the laws of the States." Rodriguez v. McLoughlin, 214 F.3d 328, 337 (2d Cir. 2000) (quoting Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L.Ed.2d 506 (1989) (internal quotation omitted)).  A prisoner must identify a viable liberty interest before he can demonstrate that such an interest was infringed. Palmer v. Richards, 364 F.3d 60, 64 n. 2 (2d Cir. 2004); Frazier v. Coughlin, 81 F.3d 313, 317 (2d Cir. 1996) (per curiam).  Confinement in SHU can implicate a liberty interest when an inmate is subjected to "atypical and significant hardship ... in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The parties here do not contest that Jay had a liberty interest at stake.

### b.    Process Due

After determining whether a liberty interest is implicated, a court must determine whether the inmate received the process he or she was due. Wolff v. McDonnell, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974). Due process rights for prisoner whose liberty interest is implicated provide for the following procedural safeguards:

> advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary

evidence; a fair and impartial hearing officer; and a written statement of the disposition including the evidence relied upon and the reasons for the disciplinary actions taken.

Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (relying on Wolff).

Judicial review of the written findings required by due process is limited to determining whether the disposition is supported by "some evidence." Superintendent v. Hill, 472 U.S. 445, 455, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985). This standard is extremely tolerant and is satisfied if "there is any evidence in the record that supports" the disciplinary ruling. Friedl v. City of New York, 210 F.3d 79, 85 (2d Cir. 2000). Nevertheless, the "some evidence" standard requires some *reliable* evidence. Sira, 380 F.3d at 69 (citing Luna v. Pico, 356 F.3d 481, 488 (2d Cir. 2004)).

State statutes and regulations do not create federally protected due process rights. Shakur v. Selsky, 391 F.3d 106, 119 (2d Cir. 2004); Ruggiero v. Prack, 168 F. Supp. 3d 495, 513–14 (W.D.N.Y. 2016) (citing Wolff, 418 U.S. at 564–70). In § 1983 cases, "federal law, not state regulations, determines the procedures necessary to protect that liberty interest." Blouin v. Spitzer, 356 F.3d 348, 363 (2d Cir.2004) (citing cases). For this reason, "the only relevant inquiry [is] whether constitutional 'minimal procedures' [for the loss of a protected liberty interest] were met, not whether state procedures were followed." Shakur, 391 F.3d at 119 (discussing Holcomb v. Lykens, 337 F.3d 217 (2d Cir. 2003)).

## 2. Jay's Due Process Claims against Hughes

### a. Impartial hearing officer

Jay argues first that Hughes was not an impartial hearing officer, because as Deputy Superintendent of Security at Attica, he was in charge of all contraband in the facility and had knowledge of the investigatory procedures used at the facility. Defendants

10

argue that Hughes provided Jay with all the process he was due at Jay's Tier III hearing.

Inmates are not entitled to hearing officers "with the same level of impartiality required by judges," though they are "entitled to a hearing untainted by arbitrary or pre-determined findings of guilt." Fowler v. New York State Dep't of Corr. & Cmty. Supervision, No. 13-CV-6546-FPG, 2020 WL 1905233, at *3–4 (W.D.N.Y. Apr. 17, 2020). "[A] hearing officer's limited impartiality requirements are satisfied where the record contains 'some evidence' to support the officer's findings." Id. (quoting Superintendent v. Hill, 472 U.S. at 455).

For purposes of a constitutional inquiry, the Second Circuit has held that the involvement of a hearing officer in the investigation of the incident, without more, does not violate a prisoner's due process rights. Shabazz v. Bezio, 669 F. App'x 592, 593 (2d Cir. 2016) (summary order) ("Standing alone, the fact that Bezio both heard the case and participated in its investigation is not a conflict of sufficient magnitude to violate due process.").

Here, Jay claims that Hughes was biased because, as DSS, his *role* was to oversee investigations. Jay argues that, as DSS, Hughes had a "facility function as a senior security person over-seeing contraband." (Docket No. 48 at p. 5.) Jay argues that Hughes was "privy to the search procedure in detail" because his role as DSS "provid[ed] him with intricate knowledge and detail of the explained protocol of the officer involved." (Docket No. 1 at p. 18.) Jay notes that the facility's contraband receipt instructs recipients that they may write to the superintendent of security regarding confiscated items. (Id.) He concludes from this statement that Hughes was "already abreast to alleged contraband logged at the time of the hearing." (Id.)

11

In essence, Jay concludes from Hughes's official duties that Hughes had actual prior knowledge of the case when he served as Jay's hearing officer. (Id. at p. 6.) What is missing from Jay's argument is any evidence suggesting that Hughes personally participated in investigating the February 12 incident, or inspected the allegedly altered mirror, and that that these actions made Hughes biased against Jay. A role as supervisor of contraband and a familiarity with investigation protocols, without more, do not establish that Hughes participated in the investigation of this particular case, let alone that it made him biased against Jay.

Jay points to interactions at the hearing that he believes demonstrate Hughes' bias against him. (Docket No. 48 at p. 7.)  Having carefully reviewed the hearing transcript, this Court does not see any bias in Hughes' conduct in the hearing.

Jay further argues that Hughes' serving as a hearing officer violated DOCCS guidelines. He cites 7 N.Y.C.R.R. § 254.1 for the proposition that "a person who was directly involved in the incident" and "a person who has investigated the incident" shall not be appointed to conduct the proceeding. (Docket No. 48 at p. 5.) In response, Defendants point to the same regulation, which allows "the superintendent, a deputy superintendent, captain or commissioner's hearing officer employed by the department's central office" or someone else appointed by the superintendent to serve as a hearing officer. (Docket No. 40-2 at p. 8.)

New York regulations, however, are not relevant to this Court's inquiry, because "federal law, not state regulations, determines the procedures necessary to protect that liberty interest." Blouin, 356 F.3d at 363. The relevant question for this Court's analysis is whether there are any facts suggesting that Hughes's personal actions caused him to be

biased against Jay. Given that there is no evidence of Hughes' participation in the investigation, and having carefully reviewed the hearing transcript, this Court finds that a reasonable jury could not determine that Hughes's conduct of the Tier III hearing was biased or partial. As reflected in the disciplinary hearing transcript and memorialized on the hearing disposition form, Hughes permitted Jay to voice his objections during the hearing and gave Jay the opportunity to testify and call witnesses. (See Docket No. 40-3 at pp. 13-47, 56.) Hughes states that he relied upon the written report and verbal testimony of Correction Officer Summers, and the verbal testimony of Correction Officers Leonard and Caldwell, and Nurse Sault. See Sloane v. Borawski, 64 F. Supp. 3d 473, 488 (W.D.N.Y. 2014). A reasonable jury could not find that Hughes was biased in his conduct of the hearing, and Jay's claim fails on this basis.

### b.  Mechanical restraints during the hearing

Jay next argues that Hughes violated his due process rights by keeping him in hand restraints during the hearing, which prevented Jay from taking notes or accessing his documents during the hearing. Defendants argue that the restraints were used to protect Hughes and others, that Jay did not object to the use of the restraints during the hearing, and that Jay was able to participate in the hearing despite the restraints.

Jay argues that Defendants violated 7 NYCRR § 250.2, which states that "mechanical means of physical restraint must never be used for disciplinary purposes… and may be used only when necessary while transporting inmates within or outside of the facility." (Docket No. 46, ¶ 11.) There is no indication that the restraints used here were used for disciplinary purposes, rather than for officer safety, during the hearing. In any event, because state regulations do not create federal constitutional rights, Ruggiero, 168

F. Supp. 3d at 513–14, this dispute is not relevant to this Court's inquiry.

This Court has carefully reviewed the hearing transcript, and does not find evidence from which a reasonable jury could conclude that mechanical restraints prevented Jay from receiving his basic rights of advance written notice; the opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition. See Sira, 380 F.3d at 69. Rather, this Court notes that Jay assented when Hughes told him the restraints could not be removed, and that Hughes would assist him in getting any documents he needed. (Docket No. 40-3 at p. 16.) It further observes that Jay was able to call the witnesses he wanted and actively interrogate them. A reasonable jury could not find that Defendants' use of mechanical restraints during Jay's Tier III hearing violated his due process rights, and summary judgment is warranted on this claim as well.

### c. Refusal to admit evidence of Jay's disciplinary history

Jay further argues that Hughes erred in refusing to admit Jay's disciplinary history as evidence at the hearing. Defendants argue that this history was irrelevant to the question addressed at the hearing, and that, even if refusing this evidence was error, it was harmless, because Jay's disciplinary history reveals a number of violent incidents.

When facing a disciplinary hearing, a prisoner has a right to call witnesses and present documentary evidence in his defense "when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." LeBron v. Artus, No. 06-CV-0532 VEB, 2008 WL 111194, at *5 (W.D.N.Y. Jan. 9, 2008) (citing Wolff, 418 U.S. at 566). "A hearing officer may rationally exclude witnesses or documents when they would be irrelevant or unnecessary to a determination of the issues in the disciplinary hearing."

Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir.1999). The burden is on the prison official to demonstrate "the rationality of his position." Fox v. Coughlin, 893 F.2d 475, 478 (2d Cir.1990).

Even if an officer fails to clearly state reasons for excluding evidence, it is harmless error if the documents would not have led to a different result. Payne v. Coburn, No. 915CV00392GLSTWD, 2017 WL 4330372, at *13–14 (N.D.N.Y. Aug. 29, 2017), report and recommendation adopted, No. 915CV392GLSTWD, 2017 WL 4326079 (N.D.N.Y. Sept. 27, 2017) ("Even assuming Deputy Supt. Colao failed to state the reason why the grievances were denied on the hearing record, the Court finds such error was harmless. … Because the past grievances would not have affected the outcome of Plaintiff's disciplinary hearing any error pertaining to the denied documents was harmless.").

Here, Hughes refused Jay's request to use his disciplinary history as evidence on the grounds that it was irrelevant. (Docket No. 40-3 at pp. 44-45.) This Court agrees that evidence of Jay's past conduct was not relevant to a determination of the events on February 17, 2012. Further, Jay's disciplinary history (supplied by Defendants in support of their motion for summary judgment) reflects four guilty dispositions for fighting or violent conduct between 2007 and 2011. (See Docket No. 40-3 at pp. 92-94.) It was not error for Hughes to refuse to admit these records—both because past incidents would not have helped Hughes' factual determination and because the records would not have affected the outcome of Jay's case.

### d.  Failure to note the tape number on the hearing disposition sheet

Jay next argues that Hughes violated his rights by failing to record the tape number on his hearing disposition sheet.  Defendants argue that (1) the hearing disposition sheet

15

does contain a tape number, (2) having a tape number recorded on a hearing disposition is not one of an inmate's due process rights; and (3) even if there were no tape number, Jay was not harmed because he was able to timely grieve the hearing disposition, bring and appeal an Article 78 proceeding in state court, and file this suit in federal court.

As an initial matter, this Court observes that the hearing disposition sheet submitted with Defendants' motion for summary judgment contains a tape number on the relevant line (see Docket No. 40-3 at p. 56), while the copy of the same document submitted by Jay with his Complaint does not. (See Docket No. 1 at p.20.) Resolving this inconsistency in Jay's favor, this Court will assume that Defendants failed to include the tape number on their original hearing disposition sheet.

But neither New York regulations nor due process require a tape number. Dixon v. Goord, 224 F. Supp. 2d 739, 744–45 (S.D.N.Y. 2002). DOCCS regulations require that a hearing be electronically recorded, but they do not require a tape number on a written statement of the disposition of a disciplinary hearing. See 7 N.Y.C.R.R. § 253.6(b) ("The entire hearing must be electronically recorded."). As discussed above, violations of state law procedural requirements do not alone constitute a deprivation of due process since "[f]ederal constitutional standards rather than state law define the requirements of procedural due process." Russell v. Coughlin, 910 F.2d 75, 78 n. 1 (2d Cir.1990). Procedural due process requires notice of the disposition, and Jay acknowledges that he received this notice.

Viewing Jay's submissions in the most favorable light, however, this Court will take him to claim that the lack of a tape number impeded his ability to appeal the outcome of the hearing, or, in other words, that Defendants hindered his access to the courts.

The Constitution requires a correctional facility to provide an inmate with meaningful access to the courts. Lewis v. Casey, 518 U.S. 343, 350, 116 S. Ct. 2174, 2179, 135 L. Ed. 2d 606 (1996). In order to state a constitutional claim, "some showing of impaired access is required," Arce v. Walker, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999), and a plaintiff must make a showing that he has suffered, or will imminently suffer, actual harm; that is, that he was "hindered [in] his efforts to pursue a legal claim." Lewis, 518 U.S. at 351; accord Morello v. James, 810 F.2d 344, 347 (2d Cir. 1987).

A plaintiff has not shown actual injury unless he shows that a "nonfrivolous legal claim had been frustrated or was being impeded" due to the actions of prison officials. Lewis, 518 U.S. at 351-52. See Jermosen v. Coughlin, No. 89 Civ. 1866 (RJW), 1995 WL 144155, at *4 (S.D.N.Y. Mar. 30, 1995) ("Interferences that merely delay an inmate's ability to work on a pending cause of action or to communicate with the courts do not violate this constitutional right."); Herrera v. Scully, 815 F. Supp. 713, 725 (S.D.N.Y. 1993) ("A delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.").

Here, the lack of a tape number on his hearing disposition sheet did not delay or prevent Jay from appealing the hearing's outcome. Jay was able to timely appeal Hughes' decision to Venetozzi, successfully have his SHU sentence reduced, bring a state Article 78 proceeding, appeal that decision to the state's appellate division, and bring the instant suit in federal court. Hughes' failure to include a tape number, therefore, did not violate any of Jay's constitutional rights.

### e. Excessive sentence

Jay next argues that Hughes' 24-month SHU sentence violated his due process

rights because it exceeded DOCCS guidelines. Defendants argue that that these guidelines are discretionary, so that a sentence in excess of them is permissible, and that Venetozzi's later reduction of Jay's sentence afforded him due process protections that corrected any possible defect in the original sentence.

Jay argues that his 24-month sentence exceeded DOCCS sentencing guidelines. But "the failure to follow a DOCS Directive or prison regulation does not give rise to a federal constitutional claim." Rivera v. Wohlrab, 232 F.Supp.2d 117, 123 (S.D.N.Y. 2002). "Accordingly, such guidelines do not rise to a level of constitutional significance," and the failure to sentence within them does not present a basis for a due process claim." Id.

Because this Court is to read pro-se litigants' arguments liberally, interpreting them to raise the strongest arguments they suggest, this Court will also assess whether the SHU sentence Jay ultimately served constituted excessive punishment in violation of the Eighth or Fourteenth Amendment.  The record shows that Jay served 13 months and 20 days in SHU. (Docket No. 40-3 at p. 58.)

"Confinement in a prison or in an isolation cell is a form of punishment subject to scrutiny under Eighth Amendment standards." Encarnacion v. Goord, 669 F. App'x 61, 62 (2d Cir. 2016) (citing Hutto v. Finney, 437 U.S. 678, 685, 98 S. Ct. 2565, 57 L. Ed. 2d 522 (1978)).To succeed on an Eighth Amendment claim, a plaintiff must show "(1) a deprivation that is objectively, sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) a sufficiently culpable state of mind on the part of the defendant official." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001) (internal quotation marks omitted). "[W]hether incarceration in the SHU violates the Eighth Amendment ... depends on the duration and conditions of confinement." Gonzalez v.

18

Hasty, 802 F.3d 212, 224 (2d Cir. 2015). "Although it is perfectly obvious that every decision to remove a particular inmate from the general population ... could not be characterized as cruel and unusual, it is equally plain that the length of confinement cannot be ignored in deciding whether the overall conditions of confinement meet constitutional standards." Id. (internal quotation marks and alterations omitted). Courts must consider whether the confinement violates "the evolving standards of decency that mark the progress of a maturing society." Trop v. Dulles, 356 U.S. 86, 101, 78 S. Ct. 590, 2 L. Ed. 2d 630 (1958).

Numerous cases in this circuit have upheld long SHU sentences that were challenged only based on the amount of time prisoners were held in segregation. See, e.g., Sostre v. McGinnis, 442 F.2d 178, 193, overruled on other grounds by Davidson v. Scully, 114 F.3d 12 (2d Cir. 1997) (declining to hold that plaintiff's confinement in punitive segregation for more than twelve months violated the Eighth Amendment); Bunting v. Fischer, No. 14-CV-0578-RJA-MJR, 2016 WL 4939389, at *4 (W.D.N.Y. Aug. 4, 2016), report and recommendation adopted, No. 14-CV-578A, 2016 WL 4804099 (W.D.N.Y. Sept. 14, 2016) (dismissing a claim for excessive punishment for approximately 4 years in SHU); Gulley v. Roach, 02-cv-908S, 2004 WL 2331922 (W.D.N.Y. Oct. 15, 2004) (holding that seven-month "duration of Plaintiff's confinement alone does not rise to the level of a constitutional violation").

Here, Jay has not provided any details of the conditions he experienced during the 13 months he ultimately served in SHU. Without such evidence, a reasonable jury could not find that the 13 months and 20 days Jay served in SHU violated contemporary standards of decency as needed for a claim of excessive punishment.

19

This Court will therefore grant summary judgment for Defendants on Jay's claim regarding his SHU sentence.

### 3. Jay's Due Process Claim against Venetozzi

Jay argues that Venetozzi is liable to him for affirming Hughes' unconstitutional Tier III hearing. Because this Court does not find a due process violation in Jay's Tier III hearing, it does not find a due process violation in Venetozzi's affirmance of that decision.

If a disciplinary hearing does not violate an inmate's Fourteenth Amendment rights, then neither can a supervisor's affirmance of the outcome of that hearing. See, e.g., Hameed v. Mann, 57 F.3d 217, 224 (2d Cir. 1995) (Director of Special Housing and Inmate Grievance Programs entitled to dismissal of claims where plaintiff failed to establish constitutional violations at disciplinary hearing); Lopez v. Whitmore, No. 13-CV-0952 (BKS/ATB), 2015 WL 4394604, at *11 (N.D.N.Y. July 16, 2015) (dismissing due process claim against DSH Prack "[b]ecause his only involvement in the plaintiff's claims was to affirm the results of a disciplinary hearing that th[e] court ... found comported with due process"); Davis v. Rynkewicz, No. 11-CV-431SR, 2015 WL 1038098, at *14 (W.D.N.Y. Mar. 10, 2015) ("As plaintiff was not deprived of his federal constitutional right to due process during the course of the disciplinary hearing, Director Prack's denial of plaintiff's request for reconsideration of that determination cannot establish a federal constitutional violation"); Wesolowski v. Harvey, 784 F. Supp. 2d 231, 234 (W.D.N.Y. 2011) (finding no constitutional claim against supervisor where no underlying constitutional violation occurred); Alston v. Bendheim, 672 F. Supp. 2d 378, 388 (S.D.N.Y. 2009) ("The failure to state a claim for an underlying constitutional violation forecloses supervisory liability.").

20

Because this Court finds that no constitutional violation occurred at Jay's Tier III hearing, it finds no violation in Venetozzi's affirmation of Hughes' guilty finding.

Jay argues that Venetozzi's reduction of his SHU term from 24 months to the guidelines 18 months is proof that Hughes' earlier sentence was unconstitutional. But, as discussed above, a sentence above the state-imposed discretionary guidelines, standing alone, does not violate due process.

Additionally, Venetozzi's reduction of the sentence Hughes imposed, from 24 to 18 months, was a proper example of due process. <u>Young v. Hoffman</u>, 970 F.2d 1154, 1156 (2d Cir. 1992) ("The administrative reversal constituted part of the due process protection he received, and it cured any procedural defect that may have occurred. We believe that, as a policy matter, this possibility of cure through the administrative appeals process will encourage prison administrators to correct errors as an alternative to forcing inmates to seek relief in state or federal courts.")

Because this Court finds that no reasonable jury could find that Venetozzi violated Jay's due process rights, it will grant summary judgment to Defendants on this claim.

**4.  Preclusive effect of New York state court decisions.**

Defendants also argue that summary judgment is warranted because the New York State Supreme Court and Appellate Division decisions on Jay's claims preclude this Court's reconsideration of the issues. Because this Court has concluded on its own that no reasonable jury could find that a constitutional violation occurred, it will not address Defendants' preclusion argument here.

## IV.  CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment is granted. Jay has raised no genuine issue of material fact suggesting that Hughes violated Jay's rights in the course of the Tier III hearing, or that Venetozzi violated his constitutional rights, either in affirming Hughes' Tier III determination or in reducing Jay's sentence.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 40) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.

Dated:      July 30, 2020
            Buffalo, New York

                                        s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        United States District Judge